# APRIL 25, 1934

BUCK BASS V. THE STATE.

No. 16668.  Delivered April 25, 1934.

The opinion states the case.

*John L. Poulter*, of Fort Worth, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of burglary, and his punishment was assessed at confinement in the State penitentiary for a term of two years.

The testimony shows that on the 27th and 28th of July, 1933, there were some 70 or 80 box cars loaded with small grain standing in the yards of the G. C. & S. F. Railroad in the city of Fort Worth, Texas.  Some time during the 27th day of July it was discovered that some of the cars had been tampered with and the officials of the Santa Fe Railway Company, on the evening of the following day, sent two special officers to watch said cars and apprehend the offenders.  At or about 9 P. M. these officers noticed a small truck loaded with sacks of small grain standing near one of the box cars and noticed men at work under several of the cars extracting grain therefrom.  The special officers concluded that they needed help as there were too many parties engaged in the commission of the burglary, whereupon one of them went to the city and returned with several policemen, while the other special officer remained secreted in the weeds near the truck.  When the policemen came down the tracks besides the box cars, the appellant and his companion emerged from under a box car marked "A. T. 118,168," and ran in the direction of

the truck near where one of the special officers was secreted. Said special officer commanded the fleeing men to stop and when they refused to obey his command he shot the appellant and captured him. An examination of the box car disclosed the fact that a hole had been bored through the floor of the car with an auger through which the grain flowed out. The auger and shavings were found under the car. The truck which was loaded with maize stood near the box car from which the appellant and his companion fled, and it contained the same kind of maize as that in the car. It was also discovered that approximately 1280 pounds of maize had been withdrawn from said box car. The truck with the maize was taken in charge by the officers. It was further shown that late in the evening of the 28th day of July, 1933, the appellant rented said truck from one Goolihar. There was no direct evidence showing when or by whom the hole was bored through the floor of the car. The appellant contends that the evidence does not show that the appellant was guilty of the burglary as there was no entry. The facts, however, show that force was employed in making a hole through the floor of the box car with the intent to steal loose grain from same. The facts further show that by said means something like 1280 pounds of grain had been taken from said car and the other facts and circumstances were sufficient to justify the jury in concluding that the appellant and his companion bored the hole through the floor of the car with a view and for the purpose of getting the grain out of the car.

The appellant's contention that the evidence fails to show an entry is untenable. It is true that he did not break open a door nor did he pull off any of the walls of the car and enter same in person, but this is not necessary under the statute, because the statute says that the word "entry" includes every kind of an entry but one made by the free consent of the occupant or one authorized to give such consent. Under article 1393, P. C., it is not necessary that the whole body or a part of the body should enter the building, but it is sufficient if an instrument is introduced for the purpose of taking from the house any personal property although no part of the body is introduced. In the instant case, an auger was used as the means of entering the box car and through the entrance that was made by the auger grain was taken from the car without the consent of the person in charge of it, which leads us to the conclusion that the entry in the instant case falls within the definition of the word "entry" under articles 1393 and 1392, P. C.

By bill of exception appellant complains of the court's main charge in defining the words "Breaking" and "entrance," in this,

that he claims the court in his charge failed to instruct the jury as to what acts were necessary to constitute theft. We have carefully considered the appellant's objections in connection with the court's charge and have reached the conclusion the charge is not subject to the objection addressed to it. The circumstances show the entry was made at nighttime and by the use of force. We believe that the court's charge was sufficient, and in support of the views herein expressed we refer to the case of Montgomery v. State, 55 Texas Crim. Rep., 502, and Collier v. State, 111 Texas Crim. Rep., 249.

Since no reversible error appears in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.